IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION


JELISA ROGERS,
O/B/O JDS                                                                                    PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:16-CV-108-RP

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security                                           DEFENDANT

## MEMORANDUM OPINION

Plaintiff Jelisa Rogers o/b/o J.D.S. has applied for judicial review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) of the Commissioner of Social Security's decision denying her application for supplemental security income (SSI) as a disabled minor child under Title XVI of the Social Security Act. Docket 1. Plaintiff filed an application for benefits as a disabled minor child on May 20, 2013, alleging disability beginning on March 3, 2013. Docket 7 at 114-119.

The agency administratively denied Plaintiff's claim initially on July 2, 2013 and on reconsideration on September 12, 2013. *Id*. at 48-54; 56-63. Plaintiff then requested an administrative hearing, which Administrative Law Judge (ALJ) Jerry M. Lang held on December 10, 2014, at which Jelisa Rogers,[2] J.D.S.'s mother, testified on his behalf. *Id*. at 75-76; 85-89; 115. The ALJ issued an unfavorable decision on January 26, 2015. *Id*. at 14-29. The Appeals Council denied Plaintiff's request for review on April 5, 2016. *Id.* at 1-4. Plaintiff timely filed

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).
[2] The ALJ hearing transcript states that "Reshi Rochester [phonetic]" appeared and offered testimony for the minor child. Docket 7 at 34. At the hearing before the undersigned, Plaintiff clarified that "Reshi Rochester" referred to Plaintiff Jelisa Rogers.

this appeal from the April 5, 2016, decision, the undersigned held a hearing on March 6, 2017, and it is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment. Docket 10.

## I. FACTS

The minor child, J.D.S. was born on September 23, 2011, and was three-years old at the time of the ALJ hearing.[3] Docket 7 at 36, 114. J.D.S.'s application for supplemental security income was filed by Jelisa Rogers, his mother, on his behalf. *Id*. at 114-19. Plaintiff alleges disability due to "chronic asthma and eczema and allergies." *Id*. at 142. The ALJ determined that J.D.S. suffered from a severe impairment of asthma, but that this impairment did not meet or equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926) or functionally equal the severity of the listings in 20 CFR 416.924(d) and 416.926(a). *Id*. at 20. After considering the record evidence and applicable rulings and regulations, the ALJ found that J.D.S.'s "medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id*. at 22. The ALJ specifically found that "the objective evidence […] clearly shows that the claimant's condition improved when he was given the appropriate medications in the emergency department" and concluded that "the frequency of his emergency department visits would imply that he is not being given his medications as prescribed" despite being "prescribed appropriate medications for

---

[3] J.D.S. was considered an older infant on the date his application was filed and at the time the ALJ issued his decision. Docket 8 at 20.

home use." *Id*. at 23. After evaluating all of the evidence in the record, including Plaintiff's testimony, the ALJ held that J.D.S. is not disabled under the Social Security Act. *Id*. at 29.

Plaintiff asserts that the ALJ erred in concluding that J.D.S.'s asthma does not equal Listing 103.03[4] or, alternatively, is not medically equivalent or functionally equivalent to Listing 103.03, and that the ALJ failed to develop the record. Docket 12.

## II. EVALUATION PROCESS

The Personal Responsibility and Work Opportunity Reconciliation Act statutorily amended the relevant substantive standard for evaluating children's disability claims. Under the 1996 Act, a child seeking SSI benefits based on disability will be found disabled if he has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *See* 42 U.S.C. § 1382c(a)(3)(C) (2004). In determining disability of a child, the Commissioner, through the ALJ, works through a three-step sequential evaluation process.[5] At all stages of the proceedings the burden rests upon the plaintiff to prove disability. First, the ALJ determines whether the child is working.[6] Second, the ALJ decides whether the child has a medically determinable "severe" impairment or combination of impairments. Finally, at step three, for a finding of disabled, the ALJ must conclude the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02.[7] In making this determination, the ALJ must consider the combined effect of all medically

---

[4] Plaintiff's brief argues that Plaintiff's asthma meets listing 103.03; however, counsel for Plaintiff conceded at the hearing that based on the record before the Court, Plaintiff did not meet the listing. Docket 12 at 7-9.
[5] *See* 20 C.F.R. § 404.924 (2004).
[6] 20 C.F.R. § 416.924(b) (2006)
[7] 20 C.F.R. §§ 416.924(d), 416.925 (2006).

determinable impairments, even those that are not severe.[8] If plaintiff's impairment is severe but does not meet or equal in severity a listed impairment, the ALJ must then determine whether the impairment is "functionally equal in severity to a listed impairment."

Under the final regulations published by the Social Security Administration, effective January 2, 2001, the Commissioner measures functional equivalency according to six domains of function:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for himself; and
6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i-vi)(2007). To be functionally equivalent to a listing, the medically determinable impairment or combination of impairments must result in either a "'marked' limitation in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a (2007). A marked limitation interferes seriously with the child's ability to "independently initiate, sustain, or complete activities," while an extreme limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* at §§ 416.926a(e)(2)(i) and 416.926a(e)(3)(i). When deciding whether a child has a marked or extreme limitation, the ALJ must consider the child's functional limitations in all areas, including their interactive and cumulative effects, and then make a determination as to whether the child is disabled under the Act. It is the ALJ's responsibility to determine functional equivalence along these domains. *Id.* § 416.926a(n).

---

[8] 20 CFR §§ 416.923, 416.924a(b)(4), 416.926a(a) and (c).

## III.  STANDARD OF REVIEW

Judicial review of the Commissioner's final decision to deny benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The Court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). A court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10]

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson,* 402 U.S. at 390.

---

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).
[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

## IV. DISCUSSION

Plaintiff argues that the Commissioner's decision should be reversed on two separate grounds. Docket 12 at 1. First, Plaintiff claims that at step three, the ALJ erred in concluding that J.D.S.'s asthma does not meet, medically equal or functionally equal Listing 103.03. *Id*. at 7-13. Second, Plaintiff claims the ALJ failed to develop the record. *Id*. at 14. At the hearing before the undersigned, counsel for Plaintiff conceded that, based on the record before the Court, J.D.S. did not meet the listing.[11] Counsel instead argued that J.D.S.'s asthma medically equals or functionally equals Listing 103.03.

First, the Court considers Plaintiff's argument that J.D.S.'s asthma is medically equivalent to Listing 103.03. Plaintiff asserts that more than one year elapsed between the Administration's September 12, 2013 Disability Determination Explanation on Reconsideration and the ALJ's decision, during which time additional, pertinent evidence entered the record. Docket 12 at 10. Plaintiff argues, citing Social Security Ruling (SSR) 96-6p, that "the ALJ should have called upon the services of a medical expert to render an [updated] opinion regarding medical equivalency" and that the ALJ's failure to do so was error as a matter of law. *Id*. at 10.

The Commissioner responds that substantial evidence supports the ALJ's decision that J.D.S.'s asthma did not medically equal a listing. Docket 13 at 5-10. The Commissioner argues that Plaintiff does not state how J.D.S. equaled Listing 103.03 or identify what medical evidence supports this position. *Id*. at 9. The Commissioner asserts that neither the ALJ nor the Appeals Counsel found that the additional evidence obtained after the September 12, 2013 determination

---

[11] Plaintiff's brief sets forth the current version of Listing 103.03 which differs from the version in effect at the time of the ALJ's decision. Docket 12 at 8. The Court reviews the ALJ's decision here to determine whether substantial evidence supports the ALJ's findings as to the version of Listing 103.03 in effect at the time of the ALJ's decision. The Court notes that the Commissioner cited the correct version of Listing 103.03 in her brief. *See* Docket 13 at 5-6.

could change State agency physician Dr. Tammy McGee's finding that J.D.S. did not medically equal a listing. *Id*. at 10; Docket 7 at 57-63. Therefore, under SSR 96-6p, neither the ALJ nor Appeals Counsel were required to obtain an updated medical opinion. Docket 13 at 10. The Commissioner points to instances where the ALJ considered the additional medical evidence from October and November of 2013 and September 2014 to support her contention that "the ALJ considered the additional evidence, and nonetheless determined that [J.D.S.] did not meet or medically equal a listing." *Id*.

To establish the medical equivalency of a listed impairment, the "set of symptoms, signs and laboratory findings in the medical evidence supporting the claimant '[must be] at least equivalent in severity to the set of medical findings for the listed impairment.'" *Martinez Nater v. Sec'y of Health & Human Servs.*, 933 F.2d 76, 77 (1st Cir. 1991). Where one or more of the listing's specified medical findings is missing from the evidence, equivalency may be found where "other medical findings of equal or greater clinical significance and relating to the same impairment are present in the medical evidence." *Id*. at 77-78. The determination of medical equivalence is a medical determination and should be made by a doctor and based on objective medical evidence. *Kinash v. Callahan*, 129 F.3d 738-39 (5th Cir. 1997).

Here, at the Initial level, Eva M. Henderson, M.D. determined that J.D.S. suffered from respiratory system disorders (asthma) and dermatitis but concluded that neither was severe. Docket 7 at 49-54. Dr. Henderson concluded that these impairments did not medically equal or functionally equal a listing and that J.D.S. was not disabled. *Id*. At the Reconsideration level, on September 12, 2013, Dr. Tammy McGee similarly concluded that J.D.S.'s impairments were not severe nor did they medically equal a listing. *Id*. at 57-63.

After Dr. McGee's assessment, J.D.S. received treatment on October 17, 2013, November 13 and 14, 2013, and September 18-20, and 25, 2014. Docket 7 at 256-58; 277-82; 288-92; 267; 370-81; 387-97; 399. The ALJ discussed each of these visits in his opinion and afforded little weight to Dr. McGee's assessment that J.D.S.'s asthma was not severe. *Id*. at 24. "After a review of the entire record, including records that Dr. McGee did not have the opportunity to review," the ALJ concluded that J.D.S.'s respiratory issues were "obviously severe," but concluded that J.D.S.'s "condition improved when he was given the appropriate medications" and that despite being prescribed the appropriate medications for home use, "the frequency of [J.D.S.'s] emergency department visits would imply that he is not being given his medications as prescribed." Docket 7 at 22-24. Despite finding J.D.S.'s asthma severe, the ALJ determined that, based on the objective medical evidence, J.D.S. did not satisfy the requirements of Listing 103.03 and further was not disabled. *Id*. at 24, 29.

The Court rejects Plaintiff arguments that the ALJ erred as a matter of law by failing to obtain an additional medical expert opinion following the submission of additional medical evidence. The ALJ is required to obtain updated expert testimony only if, *in his opinion*, additional medical evidence is received that might change the state medical consultant's findings that the impairment is not equivalent in severity to the listing; otherwise, the ALJ's decision not to obtain an updated medical opinion from a medical expert is discretionary. *See* SSR 96-6p at 3-4; *see Lewis v. Astrue*, 2010 WL 2243288, at *4 (N.D. Miss. June 1, 2010) (citing *Barnes v. Astrue*, 2008 WL 5348225, *9 (S.D. Tex. 2008); *see also*, *Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2008) (citing 20 C.F.R. §§ 404.1526, 404.1527(f)(2)(iii)) ("The use and consideration of medical expert testimony is solely within the discretion of the ALJ").

The Court finds that the ALJ had sufficient medical evidence in the record to determine that J.D.S. did not meet the necessary requirements to equal Listing 103.03.[12] Although the medical records obtained after Dr. McGee's assessment reflect two separate hospital admissions (November 13-14, 2013 and September 18-20, 2014), these do not satisfy the Listing criteria. Specifically, the medical evidence does not reveal asthma of the intensity and requiring the level of treatment contemplated in part (B) of Listing 103.03.

On October 17, 2013, at J.D.S.'s well exam, J.D.S. demonstrated only "mild wheezing" and was advised to continue albuterol nebulizer treatments only "as needed." Docket 7 at 23, 258. At this well visit, J.D.S. was prescribed Pulmicort for the following three months. *Id*.

On November 13, 2013, J.D.S. was seen in the emergency department of Baptist Memorial Hospital with complaints of cough, fever, runny nose, and congestion. *Id*.at 288. On physical exam J.D.S. was not in respiratory distress and had normal breath sounds. *Id*.at 289. He was diagnosed with bronchitis and prescribed Amoxil due to what appeared to be sinusitis and was given an albuterol treatment. *Id*.at 289-90, 267. However, several hours later J.D.S. returned to the emergency department with continued wheezing and was admitted for further evaluation and treatment for an acute exacerbation of asthma. *Id*. at 267. Dr. Googe, J.D.S.'s treating physician, believed Plaintiff had been noncompliant with the administration of Pulmicort. *Id*. at 267-68. J.D.S. received albuterol nebulizer treatments every four hours, resumed his Pulmicort nebulizer treatment twice a day, and received oral steroids. *Id*. at 267. Dr. Googe reported that

---

[12] As mentioned in footnote 11, Plaintiff's brief sets forth the current version of Listing 103.03, which is inapplicable to this appeal because it was not in effect at the time of the ALJ's decision. The version of Listing 103.03 and subpart applicable to this Court's review is as follows:
    **103.03** *Asthma.* With:
        B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.
Docket 7 at 23.

J.D.S. did well and that his wheezing appeared to have significantly improved upon discharge. *Id*.

On September 18, 2014, J.D.S. presented to the emergency department at Baptist Memorial Hospital with complaints of wheezing and shortness of breath. *Id*. at 370. J.D.S. received albuterol treatments, which caused improvement. *Id*. at 381. However, J.D.S. was transferred to LeBonheur and admitted for two days for "increased work of breathing, hpoxia, and asthma exacerbation." *Id*. at 390. LeBonheur records note that J.D.S. was "a persistent asthmatic with eczema and likely [had] an aeroallergen component." *Id*. Upon admission the records reflect that the only medication J.D.S. was taking was "albuterol as needed."[13] *Id*. at 388. On discharge, LeBonheur recommended a Pulmicort treatment twice daily "due to helping with compliance." *Id*. at 390, 396. After being discharged from LeBonheur, J.D.S. saw Dr. Googe for follow up and was "doing well" with improvements in breathing and wheezing and was taking Prednisone, Albuterol nebulizer, and Pulmicort. *Id*. at 399.

Substantial evidence supports the ALJ's determination that these additional medical records would not have altered Dr. McGee's finding that J.D.S. did not medically equal a listing. The Court affirms the ALJ's determination that J.D.S. did not satisfy the requirements for medical equivalency as set forth in the listing.

Plaintiff alternatively asserts that J.D.S.'s asthma is functionally equivalent to Listing 103.03. Docket 12 at 11. Plaintiff argues that "a review of the record demonstrates that [J.D.S.] has extreme limitations in health and physical well-being" and that the ALJ erred when he found

---

[13] The LeBonheur records indicate, and the ALJ notes, the J.D.S. "was previously on a controller medication although mother cannot recall the name; however this was discontinued by his pediatrician in March as he seemed to be improving." Docket 7 at 23-24, 387. The ALJ points out that Dr. Googe did not treat J.D.S. in March 2013, and Dr. Googe's treatment notes from January 2013 and May 2013 fail to show that any medication was discontinued. *Id*. at 24; 225-27.

that J.D.S. had "less than marked limitation" in this domain.[14] *Id*.; Docket 7 at 28. Plaintiff recites a lengthy list of medical findings yet fails to show *how* the evidence demonstrates an extreme limitation in the domain of health and physical well-being. *Id*. at 11-13.

The health and physical well-being domain "consider[s] the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [plaintiff's] functioning that [were] not consider[ed]" when evaluating plaintiff's ability to move about and manipulate objects. 20 C.F.R. § 416.926a(*l*). "This domain does not address typical development and functioning," but instead "addresses how such things as recurrent illness, the side effects of medication, and the need for ongoing treatment affect a child's body." SSR 09–8p.

In evaluating this domain, the Commissioner considers whether the impairment limits a plaintiff's ability to perform activities independently or effectively when: (1) it causes reduced stamina or shortness of breath; (2) it causes the plaintiff to take medications that limit performance of activities; and/or (3) it leads to periods of worsening. 20 C.F.R. § 416.926(*l*)(1)-(3). Examples of limitations that are considered in this domain include: (i) generalized symptoms such as lethargy; (ii) somatic complaints related to impairments; (iii) limitations in physical functioning because of treatment (such as nebulizer treatments); (iv) exacerbations from the impairment that interfere with physical functioning; and (v) medical fragility requiring intensive medical care. 20 C.F.R. § 416.926a(*l*)(4)(i)-(v). An "extreme limitation" can be found only where an impairment "interferes very seriously" with a person's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

---

[14] In his functional equivalency analysis, the ALJ found that J.D.S. had no limitation in (1) acquiring and using and information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, and less than marked limitation in (5) the ability to care for himself, and (6) health and physical well-being. Docket 7 at 24-28.

The Court concludes the ALJ did not err in concluding that J.D.S. had less than marked limitations in his health and physical well-being. The ALJ considered J.D.S.'s "severe recurrent" asthma and "need for frequent nebulizer treatments" in concluding that J.D.S. has "less than marked limitations in this domain of functioning." Docket 7 at 28.

Dr. Googe's records from multiple visits show that J.D.S. had a normal gait, normal fine and gross motor skills, normal behavioral development, neuro-development, and language development. *Id*. at 225 (May 2013); 226-27 (January 2013); 228-29 (September 2012); 346 (November 2013). The May 2013 Function Report indicated that at 20 months old J.D.S. was able to crawl, stand, walk, climb, throw a ball, dance or jump up and down, run, stack small blocks, push and pull small toys, and scribble with a crayon or pencil. *Id*. at 134. J.D.S. could cooperate with getting dressed, undress himself, feed himself, and drink from a cup without help. *Id*. at 135. By October 2013, J.D.S. could walk up and down stairs, one step at a time. *Id*. at 257. Substantial evidence supports the ALJ's determination that the physical effects of J.D.S.'s asthma did not interfere very seriously with his ability to independently initiate, sustain, or complete activities.

Finally, Plaintiff argues that the ALJ failed to properly develop the record. Docket 12 at 13-14. Specifically Plaintiff argues that "the ALJ relied solely on the opinion of State Agency Medical Consultant Dr. McGee, in making his determination regarding [J.D.S.'s] physical limitations" and "that the ALJ should have sent [J.D.S.] to a consultative examiner for an opinion as to [his] physical limitations." *Id*. at 14. The Commissioner counters that "the ALJ properly exercised his discretion in determining such an examination was not necessary." Docket 13 at 13. The Commissioner further argues that Plaintiff has not shown the necessary prejudice requiring

remand because Plaintiff has not offered any evidence that would have altered the ALJ's decision. *Id*. at 14.

It is well established that an ALJ has a duty to develop the record fully and fairly and to ensure that his decision is an informed one based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). When the ALJ fails in that duty and does not have before him sufficient facts on which to make an informed decision, his decision is not supported by substantial evidence. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). Reversible error will be found only when the ALJ's failure to fully develop the record prejudices the claimant. *Castillo v. Barnhart*, 325 F.3d 250, 351 (5th Cir. 2003). In order to establish prejudice, "a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728.

Contrary to Plaintiff's assertion, the ALJ did not rely soley on Dr. McGee's opinion in making his determination about J.D.S.'s physical limitations. Rather, the ALJ gave "little weight" to the portion of Dr. McGee's assessment that J.D.S.'s asthma was not severe. Docket 7 at 24. Considering the entire record, "including the records that Dr. McGee did not have the opportunity to review," the ALJ determined that J.D.S.'s asthma was "obviously severe." *Id*. As discussed herein, the ALJ's determination that J.D.S. did not suffer from an extreme limitation in his health and physical well-being is supported by substantial evidence in the record, specifically Dr. Googe's records dating from September 2012 through November 2013 as well as in Plaintiff's own May 2013 Function Report. *Id*. at 225-29; 346; 130-36. As such, the ALJ properly exercised his discretion in determining that an additional consultative examination was not necessary to make a disability decision. *See Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir.

1989). The ALJ's determination regarding Plaintiff's physical limitations is based on sufficient facts in the record and therefore, his decision is supported by substantial evidence.

## CONCLUSION

The ALJ's decision that J.D.S.'s asthma did not medically equal or functionally equal a listing is supported by substantial evidence, and the decision of the Commissioner should be affirmed. A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED,** this the 28th day of March, 2017.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE